FOURNET, Chief Justice.
 

 The defendant, New York Life Insurance Company, having issued policies of accident and sickness insurance to the plaintiff, S. Ray Telford, is appealing from the District Court’s judgment ordering payment to the plaintiff, in accordance with the provisions of the accident policy, of $50 per week during the period of his total disability, plus medical, hospital and surgical fees expended
 
 [1]
 
 — the defendant’s contention being that it is not liable because the plaintiff’s disability already existed when the policies were applied for and the plaintiff’s application contained gross misrepresentations concerning his physical condition anil medical history which were so material that if they had not been made the policies would not have issued.
 

 The record reveals that at the time plaintiff applied for the insurance (March 31, 1953) he was 38 years of age; his occupation was that of a carpenter. When the de
 
 *860
 
 fendant’s agent approached him in an attempt to sell the insurance in question, the plaintiff, who was then working on a job, stated that he doubted he would be accepted because of stiffness in his arm; he told the agent of having been in an automobile accident in March, 1949, when he had suffered a multiple fracture of the bone of his left arm, requiring the placing therein of an intra-medullary pin; recounted that after a period of recovery he had been able to again use his arm in his work, the only noticeable impairment being an inability to move it freely, which still persisted; and mentioned that some months past, in September, 1952, the pin, having been the cause of an infection, had been removed. It was the defendant’s agent who filled in the answers to the various questions on the application form; that form was signed by the plaintiff and was accompanied by the payment of premiums* of $34.80 applicable to the accident policy and $25.45 applicable to the sickness policy, each policy being for a term period of three months effective from April 1, 1953. The policies issued in due course.
 

 The accident which brought about the present litigation occurred on the 20th of the following month (April) while the plaintiff was engaged in building a warehouse; he was lifting several boards of storm sheeting (weighing 8 to 10 pounds a board) preparatory to cutting them when he suffered severe pain in his arm. He left his work and went directly to the doctor who had previously treated him; X-rays showed an angullation, or bending of the bone, at the fracture site, and the plaintiff was referred to the Campbell Clinic in Memphis, where an operation was performed in which a portion of his shin bone was removed and placed in his arm. His leg was in a brace and his arm in a cast for about four and a half months; at the time of suit these had been removed, but he had not been able to resume his work, having been told by the doctor who performed the bone graft not to do any lifting until given permission by him to do so.
 

 The defendant’s claim of gross misrepresentation of fact concerning the physical condition and medical history of the plaintiff is based on the latter’s answers to two questions appearing on the application, i. e., “22. Have you ever had, or been advised by a physician or other practitioner to have, a surgical operation? Yes □ No Kl (If ‘Yes’, give full details)”; and “23. Have you consulted a physician or other practitioner within the past five years or had any illness or disease not mentioned in the answers above? Yes E3 No □ (If ‘Yes’, give full details) Broken arm, car accident March 1929.”
 

 The jurisprudence of this State
 
 [2]
 
 
 *862
 
 and the law generally prevailing
 
 [3]
 
 is that if an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogatories contained therein, which are truthfully answered by the insured, where the latter acted in good faith and had no knowledge that his answers were not correctly recorded, and in the absence of circumstances from which constructive knowledge of falsity might be imputed to him, the insurer cannot rely upon the falsity of such answers in seeking to avoid liability under the policy issued upon the application.
 

 But counsel for the defendant, reasoning that the above doctrine is based on the rule of law which imputes to the principal the knowledge of his agent, contends that it is inapplicable here because of the following words appearing in print on the application : “It is mutually agreed that: 1. Except where the proposed insurance in connection herewith takes effect as from the date of this application pursuant to the receipt attached as a coupon and corresponding in date and number herewith, any insurance issued on this application shall not go into force unless and until the policy therefor is delivered to the Proposed Insured and the premium therefor paid in full and then only if no change shall have occurred in the insurability of the Proposed Insured since the time of completing this application and thereupon the policy shall be deemed to have taken effect as of the date of issue specified therein. 2. Notice to or knowledge of the soliciting agent or the medical examiner, if any, is not notice to or knowledge of the Company and neither of them is authorized to accept risks or to pass upon insurability.”
 

 The defendant, in discharging the burden of proof resting upon it in such cases,
 
 [4]
 
 as proof of its defense that if the application had stated the truth about the recent operation performed on plaintiff’s arm for removal of the pin the insurance would not have been authorized, or, if authorized at all, would have excepted all disability connected with or arising from the condition of his arm, offered the testimony of the Manager of its Underwriting Division of the Accident and Sickness Department, whose duty consists in appraising the acceptability of a risk following a review of the application and any other pertinent papers. His testimony was taken by deposition.
 

 From a perusal of that testimony it is immediately apparent that of the seven interrogatories propounded, several were
 
 *864
 
 based on -an incorrect factual hypothesis. The two pertinent here are: - “At the time when S. Ray Telford applied for the issuance of policies insuring him against accidental injury and insuring him against sickness, if he had stated in his application
 
 that in November, 1952, he was having trouble with the fracture in his arm
 
 and had been obliged to consult his physician and
 
 had been informed that
 
 the trouble with his arm was the failure of the broken bone to
 
 heal and grow together,
 
 what action, if any, would the Company have taken upon the application?” (Interrogatory No. 4) and
 
 “Assuming that the plaintiff suffered a broken arm in 1949 and was compelled to have the arm reset and a pin placed therein in November, 1952, because the broken bone had not healed and grown together,
 
 would the Company have approved the issuance to the applicant of policies insuring him against accidental injury and against sickness for a period beginning Aprii 1, 1953?” (Interrogatory No.
 
 7)
 
 (Emphasis ours.) The undisputed facts are that, the pin was placed in the plaintiff’s arm at the time of the accident in 1949; that the arm was never re-set; that the pin was, rempved on September 19, 1952, because of an infection in the area; and that plaintiff was never informed that there had been a failure of the bone to knit properly. Clearly, therefore, the Manager’s negative answers given to the above Interrogatories avail the defendant nothing, and it has failed,tp cjischarge the burden of establishing its special, defense. • ■ ; -.-
 

 Moreover, from our appreciation of the case, we cannot say that the plaintiff made any false representations or warranties; not only does the record abound with proof of plaintiff’s complete honesty and good faith in telling the defendant’s agent the entire history of the injury to his arm, but it would be unreasonable to conclude that he, a man of very limited education, was not justified in thinking that the Company’s agent had placed the correct construction on the questions appearing on the application, and that the removal of the pin was not contemplated within the term “surgical operation”- — an event described by the physician as “a matter of just an incision over the end of the pin and pulling the pin out,” requiring no further treatment.
 

 The other defenses urged, (1) that the disability which the plaintiff claims to have suffered was actually the result of a condition existing at the time of issuance of the policies and was, therefore, not covered by them; and (2) the plaintiff is bound by the proof of loss which he submitted in accordance with the requirement of both policies that affirmative proof of loss be furnished to the insurer before any liability could accrue, and which proof showed — on the statement submitted by the plaintiff as well as on the physician’s report thereto annexed — that the accident for which compensation is claimed occurred on March .24, 1949, while the policies sued on were issued effective April 1, 1953, are also ■ without merit.
 

 
 *866
 
 As pointed out in 45 C.J.S., Insurance, § 991, p. 1225, “Statements and declarations in the notice and proof of loss are prima facie evidence against the claimant of the facts so asserted, having the weight of admissions against interest; but the claimant is not conclusively bound thereby and may explain or contradict such declarations and statements, unless the facts are such as to create an estoppel against him.”
 
 [5]
 

 The evidence unmistakably shows that the plaintiff, following his recovery from the accident in 1949, had been working regularly at his trade as a carpenter and builder until he was incapacitated while performing his customary duties on April 20, 1953; and from the facts developed in this case we do not think a conclusion on our part would be warranted that an estoppel has been created against the plaintiff, particularly in view of the fact that the proof of loss here was filled in by the defendant’s agent. There is nothing in the evidence from which we could conclude that- the - defendant was misled or was in any manner prejudiced by the statements complained of in the proof of loss and attached medical report.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 HAWTHORNE, J., absent.
 

 [1]
 

 . In this suit the plaintiff sought primarily to recover under the provisions of the accident insurance policy, providing for payment of $50 a week for a period of 104 weeks and so long thereafter “as the 'insured shall be wholly and continuously disabled by such injury and prevented thereby from engaging in any occupation ■or employment for wage or profit,” plus medical, surgical and hospital éxpenses not to exceed $1,000; .and in the alternative, to recover under the provisions of the sickness insurance policy, providing for payment, not. to . exceed 52 weeks, of $25 a week in the case where the insured is not confined to his house, plus payment to a limited extent of medical, surgical and hospital fees and expenses.
 

 [2]
 

 .
 
 Harris v. Guaranty Income Life Insurance Co., 226 La. 152, 75 So.2d 227; Hardy v. Commercial Standard Ins. Co., 172 La. 500, 134 So. 407; Willhite v. Hartford Fire Ins. Co., 8 La.App. 538; Parker v. Citizens Fire Ins. Co., 4 La.App. 711; Note, 81 A.L.R. 837.
 

 [3]
 

 . 29 Am.Jur. 643-644, Yerbo Insurance, Sec. 846, n. IS; 1 A.L.R. 464 et seq.; 87 A.L.R. 1097 et seq.; 81 A.L.R. 835, and citations at pages 836-840; 117 A.L.R. 790-792.
 

 [4]
 

 . Boisblanc v. Louisiana Equitable Life Insurance Co., 34 La.Ann. 1167; Cunningham v. Penn Mut. Life Ins. Co. of Philadelphia, Pa., 152 La. 1023, 95 So. 110; Rhodes v. Metropolitan Life Ins. Co., 5 Cir., 172 E.2d 183; 46 C.J.S., Insurance, § 1295, p. 348.
 

 [5]
 

 . Travelers’ Ins. Co. of Hartford v. Melick, 8 Cir., 65 F. 178, 27 L.R.A. 629; State Mutual, etc., Ins. Co. v. Watkins, 181 Miss. 859, 180 So. 78; Carmichael v. Benefit Ass’n of Railway Employees, 153 Wash. 542, 280 P. 44; see, also, Ayres v. New York Life Ins. Co., 219 La. 945, 54 So.2d 409; Union Mutual Aid Ass’n of Mobile v. Carroway, 201 Ala. 414, 78 So. 792, and authorities therein cited; Wade v. Metropolitan Life Ins. Co., 179 S.C. 70, 183 S.E. 589; Ocean Accident
 
 &
 
 Guarantee Corporation v. Moore, 8 Cir., 85 F.2d 369, certiorari denied 299 U.S. 609, 57 S.Ct. 235, 81 L.Ed. 449.