147 So.2d 86 (1962)
Austin W. GLEASON, Plaintiff-Appellee,
v.
BANKERS LIFE & CASUALTY COMPANY, Defendant-Appellant.
No. 9759.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1962.
Rehearing Denied November 29, 1962.
*87 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant.
Browne & LaFargue, Shreveport, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Plaintiff instituted the present action for medical expenses incurred by him, claiming coverage under two medical policies issued by defendant. From a judgment in plaintiff's favor for $571.38 as medical expenses, plus penalties, attorney's fees, interest and costs, defendant has appealed.
Appellant reiterates its position taken in the court below contending the policies were issued in error in reliance upon material misrepresentations by plaintiff in his medical history and condition; that the policies were promptly rescinded by defendant upon discovery of the true facts and should now be declared null and void by this court. It is further urged the lower court erred in calculating the amount due under the policies, assuming they were in effect, and in assessing penalties, attorney's fees, and interest from judicial demand.
We find no difficulty in believing the plaintiff's version of what transpired during the interview between defendant's agent and plaintiff at which time the applications for insurance were prepared. Gleason's testimony, corroborated by another witness, was uncontradicted as to the manner in which the application forms were executed. Defendant's agent, Weeks, was not present at the trial. The company discharged him on November 21, 1960, and subsequently claimed to be unable to locate him.
Gleason told the agent he could not take the insurance because he thought his health made him ineligible. The agent persisted and assured him he could issue the policy because of the broad coverage offered by his company. Plaintiff, therefore, consented to take two policies, whereupon Weeks secured the application forms and filled in all blanks, Gleason merely affixing his signature which was in turn witnessed by Weeks. On each application there was a question as to whether the applicant had ever had any heart trouble, high blood pressure, hypertension, etc. When Weeks propounded these questions to Gleason he answered that he had experienced some high blood pressure. However, the agent did not note such in the applications, but contented himself by simply answering the question, "No."
The applications were dated March 8, 1960, and the policies were promptly issued. One is a Preferred Family-Hospital-Surgical Policy and the other is a Family Medical or Surgical Policy. The first policy is essentially for medical expenses while confined to a hospital and the other covers such expenses incurred at home, etc. On November 6, 1960, plaintiff had a coronary heart attack, which confined him to a hospital and a claim was made in due time for certain expenses covered under the policies.
Defendant refused to pay the claims, contending plaintiff had the heart trouble when he made application for the policies; that he concealed such fact from the company; and that had they known of such condition they would not have issued the policies.
A review of the testimony convinces us plaintiff did not know at the time of the application he had heart trouble. The only physician to testify was Dr. S. D. Carrington. He had treated plaintiff on occasions for high blood pressure due to hypertension. He said also plaintiff possibly had a heart murmur, but that insofar as he knew the patient was not aware of any heart ailment. He was also of the opinion that hypertension does not always denote heart trouble. Plaintiff testified emphatically he did not *88 know he had heart trouble. There was some testimony that he had visited other doctors about a heart condition, but he denied having been told by anyone that he had a heart condition, and defendant did not produce any witnesses to contradict this.
Under the circumstances as above related, defendant was not justified in withholding payment to the insured under the policies in question. LSA-R.S. 22:619(B) provides:
"In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
However, it has been repeatedly held by the courts of this state that an insurer cannot escape its liability under the above provision where the application was processed by a company salesman, as agent for the company, who falsifies the application despite truthful answers having been given by the applicant. Under such circumstances our courts have reasoned the insured is in good faith while the bad faith of the agent is imputed to his principal who thereby waives any right to claim forfeiture of the policy on the ground that the answers in the application concerning the health of the insured are false. Jacobs v. Southern Nat. Life Ins. Co. (La.App.Orl., 1945) 21 So.2d 173; Succession of Dekan v. Life Ins. Co. of Virginia (La.App.Orl., 1937) 172 So. 37; Telford v. New York Life Insurance Company, 227 La. 855, 80 So.2d 711 (1955), and cases therein cited. There is a complete lack of testimony on the question of whether the representations, claimed to be false, would have "materially affected either the acceptance of the risk or the hazard assumed by the insurer", but having decided the case on the above ground, it is unnecessary to go into the issue of materiality of the statements.
Despite the jurisprudence as established in the cases cited, supra, appellant contends this case is controlled by our decision in Matthews v. National Life and Accident Insurance Company (La.App. 2 Cir., 1956) 88 So.2d 454. This decision was based squarely on a contract provision in the policy and the opinion specifically distinguished its holding from the Telford case, supra.
The lower court's award may be broken down as follows:

Hospital and Medical Expenses $571.38
Penalties under LSA-R.S. 22:657 571.38
Attorney's fees under same Statute 500.00

Appellant contends, and we think justifiably so, that the award of $571.38 for hospital and medical expenses has been incorrectly calculated under the pertinent coverage provisions of the two insurance policies. An examination of the two policies shows they supplement one another but no duplicate payments were intended. One covers services generally rendered by a hospital, while the other covers non-hospital services. By eliminating certain duplicate payments and re-calculating the coverage under both policies, we think the award for medical and hospital expenses should be reduced from $571.38 to $489.00.
There is left for discussion the correctness of the lower court's judgment which cast defendant for penalties and attorney's fees. This portion of the decision was based on LSA-R.S. 22:657(A), which provides in part:
"All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless *89 just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. * * Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. * * *"
We think the record justified the assessment of the penalties and attorney's fees. We are not unmindful of our jurisprudence that the statute in question is penal in nature and should not be inflicted unless the action of the insurance company in refusing to pay was clearly arbitrary and capricious. As far as the record shows, the only excuse given by this defendant for its continued refusal to pay after repeated demands by insured's counsel was that it had "conflicting statements" about Gleason's physical condition at the time he made application for his insurance. During the trial no such conflicting statements were ever offered. It is true throughout appellant has contended the statements in the application conflicted with Gleason's true physical condition; but as previously pointed out herein, these were statements falsely written by defendant's agent and not those of this plaintiff.
In the final analysis, the question of whether penalties should be inflicted in this type of case is a factual matter, and we are unable to find manifest error in this portion of the judgment appealed from.
The award of $500 for attorney's fees has not been questioned as to quantum.
For the reasons stated, the judgment appealed from is amended and recast so as to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Austin W. Gleason, Jr., and against defendant, Bankers Life & Casualty Company as follows: $489.00 for hospital expenses, $489.00 as penalty and $500.00 attorney's fees, making a sum total of One Thousand Four Hundred Seventy Eight and No/100 ($1,478.00) Dollars, together with 5% per annum interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
Amended and recast.