319 So.2d 859 (1975)
PLAN INVESTMENTS, INC.
v.
Jeff BRUMFIELD and Fannie Brumfield.
No. 10371.
Court of Appeal of Louisiana, First Circuit.
September 2, 1975.
*860 Roland C. Kizer, Kizer & Kizer, Baton Rouge, for third party defendant-appellant.
Lawrence Roe Dodd, Kizer & Kizer, Baton Rouge, for plaintiff-appellee.
Carmack M. Blackmon, Baton Rouge, for third party plaintiff-appellee Fannie B. Brumfield.
Before SARTAIN, ELLIS and BARNETTE, JJ.
BARNETTE, Judge.
On October 16, 1972, Jeff Brumfield and his wife, Fannie B. Brumfield, obtained a mortgage loan from the plaintiff, Plan Investments, Inc., in the amount of $5,519.64 payable in monthly installments of $65.71. The loan was secured by a mortgage on their home. As a part of the loan negotiation credit life insurance was arranged by the mortgagee for the benefit of the mortgagor, Brumfield, from United Companies Life Insurance Company. The insurance was on the life of the mortgagor, Brumfield, and provided for liquidation of any unpaid balance on the mortgage indebtedness in the event of the death of Brumfield. A premium of $346.26 for the credit life insurance was included in the total amount of the mortgage note.
The monthly payments were made regularly, plus $5.00 which went into an "escrow account" to pay the annual premiums when due for fire and extended insurance coverage on the property.
*861 Brumfield died on September 16, 1973 at which time the monthly installments were current.
The widow, Fannie B. Brumfield, notified Plan Investments and United Companies Life Insurance Company of Brumfield's death and made demand upon the latter for payment of the mortgage balance under the terms of the insurance policy.
United refused to honor the claim for the alleged reason that Brumfield had represented his age to be 64 at the time of obtaining the loan and insurance, whereas he was then 69. The policy provisions restrict insurance coverage to persons between 18 and 65 years of age. An attempt was made to refund the insurance premium which had been paid in advance by inclusion in the mortgage note. Mrs. Brumfield refused to accept the proffered check, and the amount, $377.42, was credited to the account.
Plan Investments filed suit against Fannie B. Brumfield, individually and as widow in community for mortgage foreclosure by executory process. An injunction was sought and obtained on technical grounds which need not be discussed here. Thereafter amended petitions were filed to convert the action into an ordinary suit on the promissory note. The amended petitions do not pray for recognition and execution of the mortgage but only for a money judgment against Fannie B. Brumfield in the amount of $4,435.12 with interest and attorney's fees as provided in the note.
The defendant answered pleading payment through proceeds of the insurance and alternatively pleading the defense of failure of consideration for default in providing the insurance coverage promised and made a condition of the execution of the note.
She then pleaded a third party action against United for such judgment as might be rendered against her in favor of Plan Investments. Additionally she sought recovery of the statutory penalty and attorney's fee.
Judgment was rendered in favor of plaintiff against Mrs. Brumfield in the amount prayed for. Judgment on the third party demand was rendered in favor of Mrs. Brumfield against United Companies Life Insurance Company for the amount of the judgment against her in favor of the plaintiff, "subject to credit of $377.42 representing refund for premiums returned on the credit life insurance policy * * *."[1] The third party demand for penalty and attorney's fee was rejected.
From this judgment United Companies Life Insurance Company appealed suspensively.
Mrs. Brumfield, defendant and third party plaintiff, answered the appeal and seeks reversal of that portion of the judgment on her third party demand which rejected her claim for penalty and attorney's fee under provisions of LSA-R.S. 22:656.
She further seeks alternatively through her answer to the appeal a reversal of the judgment against her in favor of the plaintiff on the main demand based on her defense of failure of consideration.
Plan Investments, Inc. has filed a motion in this court to dismiss the "appeal" or the purported appeal which Mrs. Brumfield has attempted, alternatively, from the judgment in its favor on the main demand, in her answer to the appeal of the third party defendant. We will dispose of that motion first.
The motion is good and will be sustained. The main demand is an entirely separate and distinct action from the third party proceeding. The appeal timely taken in the latter presents to this court on appeal only the issues involved in that proceeding. Mrs. Brumfield did not appeal from the judgment against her on the main *862 demand and her attempt to do so now through her answer to her defendant's appeal meets none of the requirements of law for perfecting an appeal.
We must reject as being entirely without merit her counsel's argument that the appeal by the third party defendant brought up to this court all the issues tried below. The judgment on the main demand against Mrs. Brumfield is final.
We turn now to the issues emanating from the third party action.
Plan Investments, Inc. and United Companies Life Insurance Company are related concerns which apparently share the same office and personnel. Sidney J. Caston, who identified himself as an employee of "United Companies, Plan Investments" testified that the credit and insurance businesses are "a joint operation." That the application for the Brumfield loan was handled by Mr. Piatkiewicz, manager of the credit department and the application was then directed to him to make the mortgage loan. Mr. Piatkiewicz could not recall if Brumfield's application for the loan was made at the office or by telephone. The application form was not signed by Brumfield. The application for credit life insurance was completed in the Company office from information taken from the credit application form which has a block space for "BirthDate" in which is written "64". This was admittedly written by Mr. Piatkiewicz and the information as to age was taken from a similar form used in connection with a prior loan in February, 1972, in which the "age of insured" was shown as 63. Mr. Piatkiewicz evidently assumed that by October he was a year older and wrote in the figure "64".
After Brumfield's death a copy of the death certificate was obtained which indicated his date of birth was January 1, 1903, hence, age 69 at the time of the loan and insurance application. The information as to his age was said to have been given at the hospital by his daughter. She did not testify and, hence, we do not know the source of her knowledge of his age, nor the accuracy thereof.
The credit life insurance master policy filed in evidence provides coverage only for persons between age 18 and 65. It is more probable than not that Brumfield, who was practically illiterate, had no knowledge of the age limitations for procuring the credit life insurance. On the other hand, Mr. Piatkiewicz knew the policy restrictions but made no effort to determine the applicants eligibility when it should have been apparent to him that Brumfield was at least near the age limitation. Mr. Piatkiewicz testified in response to questions by the Court:
"Q Did you ever tell Jeff Brumfield that if he was over sixty-five that he couldn't get insurance, credit life insurance?
"A I don't remember stating that, no, sir.
"Q You never did tell him that. Did you put him on notice that if he were over sixty-five . . .
"A No, sir, I didn't."
The trial judge said in his reasons for judgment:
"It's the Court's opinion, based on the evidence and testimony presented in this case and the educational status of the defendants herein, that the application for the loan in October 1972, and also the previous loan application, were made and filled out by Mr. Piatkiewicz, the employee of the finance company. It's entirely possible, although not proven, that Mr. Piatkiewicz, being familiar with the age brackets 18-65, inclusive and in reliance on the previous application where Mr. Brumfield's age was given at 63, might well have inserted the age of 64.
"It's the Court's opinion that the act of Mr. Piatkiewicz in accepting as correct *863 the age of the insured in completing the application for the insured, Jeff Brumfield, for his insurer, third party defendant, and the fact that the age of Jeff Brumfield was requested rather than the date of his birth as the application form calls for is sufficient negligence to bind third party defendant to the information relied upon in issuing the credit life policy on Jeff Brumfield.
"The Court is not convinced that there was any misrepresentation made by the Brumfields with an intent to deceive and it's the Court's further opinion that no misrepresentation made by the Brumfields themselves was material to the issuance of the policy.
"The Court is of the opinion that the third party defendant has not borne its burden of proving that the misrepresentation of Jeff Brumfield's age was done with an actual intent to deceive the third party defendant.
"It's the Court's opinion that the evidence does effectively show that all transactions were performed in good faith by Jeff Brumfield, that he was trying to negotiate a loan, and one of the requirements made by the finance company, not by him, to secure such a loan was that credit life insurance be taken out on his life. The agent accepted Jeff Brumfield's age as stated as being correct, contrary to information required by the application. Therefore, the third party defendant may not now use this to vitiate its liability under the contract of credit life insurance issued on the life of Jeff Brumfield."
The evidence and all the circumstances surrounding the negotiations for the loan and credit life insurance amply support the above findings of fact. The evidence in the record relating to the age of the insured consists of the above mentioned death certificate, and the testimony of the widow, Fannie B. Brumfield, who testified that when the loan papers were brought to her home for execution no questions were asked concerning her husband's age, but that if she had been asked she would have said he was over sixty-five. She further testified: "I don't know, sir, how old he was, but I know he was over sixty-five."
The unverified information given at the hospital by the deceased's daughter for the purpose of the death certificate, is not conclusive that he was in fact born on January 1, 1903, a fact which obviously the daughter could not know except from hearsay information. The widow's testimony is indefinite except that it indicates her opinion that he was over sixty-five years of age.
Whether or not this inconclusive testimony is enough to discharge the third party defendant's burden of proof that the applicant was in fact more than sixty-five years of age when the credit life insurance was issued, is not essential to a determination of the material issue of the insured's intent to deceive the insurer. The evidence as a whole fails to discharge the burden of proof which the law imposes upon the defendant, insurer, that the insured falsely stated his age with actual intent to deceive, and that the alleged misrepresentation of age materially affected the acceptance of the risk. Boyette v. Chrysler Credit Corporation, 298 So.2d 130 (La. App. 1st Cir. 1974), writ refused, 302 So.2d 24 (La.1974); Murphy v. Continental Casualty Company, 269 So.2d 507 (La.App. 1st Cir. 1972); LSA-R.S. 22:619.
Apparently Brumfield's age was assumed by Mr. Piatkiewicz from reference to the prior credit application. The application forms were filled in by defendant's office employees and were not signed by the applicant. This would seem to remove any doubt which Mr. Piatkiewicz had whether the application was made by telephone or at defendant's office.
Not only did Mr. Piatkiewicz merely assume Brumfield's age at the time of making the loan in question, from the information *864 contained in the previous loan application, but there is no proof that the alleged age of 63 in the previous application was given by Brumfield. He was not asked his age when the application in question was taken by telephone. He was not asked to sign the application form. Neither he nor his wife was asked his age when the loan papers were taken to the Brumfield home by Mr. Caston for Mrs. Brumfield's signature. Furthermore, it is very significant that Brumfield was never advised by Mr. Piatkiewicz that there was any age limitation affecting his eligibility for credit life insurance.
The record is devoid of any proof that Brumfield gave any statement of age or made any other misrepresentation of fact with intent to deceive the finance company or the insurer.
We stated above that the two companies operate as "a joint operation," which is not only obvious, but also by the admission of Mr. Caston. The making of loans and the credit life insurance negotiations are handled by the same employees in one office. These employees know their requirements for security of loans by credit life insurance. Their negotiation of the loan and insurance in this case indicates a willingness to make the loan and secure it with life insurance on the basis of information previously obtained from Brumfield in connection with a prior loan. They (not Brumfield) supplied the necessary information in the new application forms without any attempt to verify its correctness. Their negligence will not be imputed to the insured. There is no evidence that he knowingly or intentionally gave false information or falsely induced them to make the loan or issue credit life insurance.
In Hendricks v. Connecticut General Life Ins. Co., 244 So.2d 249 (La.App.3d Cir.1971) the applicable jurisprudence was restated by the court as follows:
"In the case of Fruge v. Woodmen of the World Life Insurance Company, 170 So.2d 539 (3d Cir. 1965) this court reviewed the jurisprudence contruing the statute in question and held as follows:
`We think it is settled, therefore, that in view of the provisions of LSA-R.S. 22:619 an insurer cannot succeed in avoiding liability on a life insurance policy on the ground that false statements were made in the application, unless the insurer establishes: (1) That the false statements were made with actual intent to deceive; and (2) that the facts allegedly misstated were material. The law also is clear that where the insurer asserts a special defense of this sort the burden of proof rests on the insurer to establish both the materiality and an actual intent to deceive. * * * `The rule also prevails in this state that when the agent of an insurer, acting within the scope of his authority, proceeds to fill out the blanks in an application for a policy of insurance, the acts, representations and mistakes of that agent are considered to be those of the insurance company. In such a case if the agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer but are not binding upon the insured, provided that the insured was justifiably ignorant of the erroneous answers, had no actual or implied knowledge thereof, was guilty of no bad faith or fraud, and had no intent to deceive the insurer.' (citations omitted)"
We agree with the trial judge that the insurer's agent and employee, Piatkiewicz, was negligent in the manner in which he handled the question of the applicant's age. This fault will not be imputed to the insured in the absence of a clear showing that he did knowingly and intentionally deceive *865 the insurer's agent. The evidence does not support such a finding in this case. Roy v. Trans-World Life Insurance Company, 199 So.2d 416 (La.App.3d Cir. 1967); Morein v. American Physicians Insurance Company, 192 So.2d 887 (La.App. 3d Cir. 1967), writs refused, 250 La. 268, 195 So.2d 147 (1967); Fruge v. Woodmen of the World Life Insurance Society, supra.
The only remaining issue is that of penalty and attorney's fee. By answer to the appeal the third party plaintiff appeals from that part of the judgment which rejected her claim on this issue. On this point, in his reasons for judgment, the trial judge said:
"It is further the judgment of this Court that the judgment for attorney's fees as prayed for in the third party demand under R.S. 22:656 is rejected by the Court and interest on the amount of the judgment in the third party demand is granted from the date of receipt of due proof of death by the insurer until paid."
This is correct as a matter of law. LSA-R.S. 22:656 makes no provision for allowance of attorney's fees. It allows only the penalty of six per cent from the date of receipt of due proof of death by the insurer. The judgment as signed and filed, however, allows seven per cent and must be corrected. The amount of the interest as penalty must not be confused with the rate of judicial interest which follows as a matter of law upon the judgment rendered.
The judgment on the third party demand is in favor of the third party plaintiff, Mrs. Brumfield, for the exact amount in principal ($4,435.12) plus interest and attorney's fees for which she was cast in favor of plaintiff, Plan Investments, Inc., but with the additional condition: "* * * subject to a credit of $377.42 representing refund for premiums returned on the credit life insurance policy, * * *." It is not clear from the record before us if the refund credit was entered in Brumfield's account with Plan Investments before or after the principal balance of $4,435.12 was computed. We will therefore delete the quoted provision from the third party judgment, for the third party plaintiff is entitled to full recovery of the amount for which she was cast in favor of Plan Investments, plus the interest penalty. If there is an error in bookkeeping it is merely a clerical error which the plaintiff and third party defendant (joint operators) can easily adjust between themselves.
For these reasons the judgment in favor of third party plaintiff, Fannie B. Brumfield, and against third party defendant, United Companies Life Insurance Company, is amended by deleting therefrom the provision "subject to a credit of $377.42 representing refund for premiums returned on the credit life insurance policy, together with 7% interest from date of receipt of notification of Jeff Brumfield's death, October 12, 1973, until paid." In lieu thereof there be judgment of six per cent per annum interest on the amount due from October 12, 1973 until paid as penalty. The judgment is further amended to provide that all costs of these proceedings shall be borne by third party defendant, United Companies Life Insurance Company.
In all other respects the judgment insofar as it was appealed is affirmed, at appellant's cost.
Amended and affirmed.
NOTES
[1] The correctness of the judgment in making this credit allowance is discussed below.